FILED

JUL 0 3 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Vesko Borislavov Ananiev
1243 Kodiak Court
Santa Rosa, California [95405]

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Case No: CV 12 2275 SI

Vesko Borislavov Ananiev,
PRIVATE ATTORNEY GENERAL

              Plaintiff

   v.

AURORA LOAN SERVICES, LLC, AURORA
BANK, FSB, THE WOLF FIRM, ROSENTHAL,
WITHEM & ZEFF, ROBERT L. ROSENTHAL,
ESQ, MICHAEL D. ZEFF, ESQ.

Does 1-10, inclusive

       Defendants
_____/

FIRST
AMENDED PETITION
FOR
DECLARATORY
AND INJUNCTIVE
RELIEF

Trial by Jury
Demanded

**Filed Pursuant to Title 28 US Code at 2201 and 2202, Title 15 US Code, Section 1692(c), 1692(d), 1692(e), 1692(f), 1692(g), 1692(i) and Public Law at TITLE 15 USC, Section 1640, 1641(f), 1641(g) as Original Intent of Congress as follows:**

## A. ISSUES AND STATEMENT OF THE CASE:

1. Defendants and Claimants participated in contract and commercial activity in respect to a Negotiable Instrument Note, which is attached to a bond, which is expressly

1

2

3

4

5

6

7

8

9

10

11

governed by Federal law and the Uniform Commercial Code which are uniform statutory laws of all of the United States of America including the District of Columbia and all fifty states. Plaintiff makes the claim that the instrument/obligation became voidable when the Defendants participated in fraudulent and illegal activity, violating the rules of the laws under which the note/instrument bond is expressly governed and also violated their duty as officers sworn statutorily to act within the parameters of Uniform Commercial Code, the National Bank Act and other applicable statutes. **The Plaintiff does not ask for monetary damages unless the Defendants file an answer or a motion of any kind**. If, however, the Defendants file an answer, the Plaintiff wants damages as describes herein.

12

13

14

## B. SHORT PLAIN STATEMENT OF THE CLAIM

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2. On June 11, 2004 the original creditor, **INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL MORTGAGE CORP** under loan number with the Loan Number **0001437682** entered into a residential mortgage agreement with me, the Plaintiff, Vesko Borislavov Ananiev in this matter, for property located in Santa Rosa, California, which is my home. It appears that either HAMILTON FINANCIAL CAPITAL CORPORATION or LEHMAN BROTHERS BANK, FSB subsequently sold the original note to a mortgage backed security, SARM SERIES 2004-10 and has failed to notify me of the transfer of the note, violating their duty of full disclosure to me, of notification of the transfer and assignment of the note, see Title 15 US Code, Section 1641(g). The fact that the note was transferred several times and only one assignment was recorded in this matter, and that the alleged loan servicer, AURORA LOAN

SERVICES, LLC has steadfastly refused to identify the current note holder or bring forward the original note with indorsements, is forensic evidence that the note was sold.

3. The assorted group of banks, loan servicers and agents have left a paper trail that give indications of what happened to the note and deed of Trust in this matter. The loan servicers and alleged creditors in this matter have steadfastly refused to disclose the identity of the actual note holder and they have failed to supply a complete picture of the series of assignments and details of the securitization process, that would be necessary to understand who is the actual creditor and whether or not the claimed creditors have what they need to foreclose or to claim the right to enforce the note and deed of trust. The loan servicer prepared and signed an Assignment of Deed of Trust document and then recorded it, see **Exhibit A**. The Assignment of Deed of Trust, was signed by an AURORA LOAN SERVICES, LLC employee, while falsely presenting herself as a MERS, Inc. executive. There is no evidence that the signer of the Assignment of Deed of Trust document, Jan Walsh, has ever been appointed by the Board of Directors of MERS, Inc as a Vice-President of MERS, Inc. No resolution of the Board of Directors of MERS has ever been brought forward that appointed Jan Walsh as a MERS Vice-President. In addition, MERS, Inc. was never assigned the note, never had an interest in the note or the right to receive monthly payment of the Note. The note cannot be assigned to one party while the Deed of Trust is assigned to another. If the Note and Deed of Trust are split the note becomes unenforceable. MERS CANNOT BE A BENEFICIARY unless they are the note holder and have a right to receive the payment of the note.

1        4. I, the Plaintiff, hired a financial analyst to provide me with a securitization audit.

2    This Securitization audit included a Bloomberg report. The Bloomberg data-base and

3    electronic financial reporting service is relied upon by financial professions worldwide as

4    a high quality and authoritative source of financial information. The Bloomberg data-base

5    is widely accepted as one of the most reliable financial services available amongst

6    financial professionals. The Bloomberg report identified a REMIC, which is an

7    investment fund for investors to purchase mortgage-backed-securities, that contained the

8    note I signed on June 11, 2004. The term REMIC is shorthand for Real Estate Mortgage

9    Investment Conduit and buys mortgage notes for residential property, which are placed in

10   pools of mortgage notes of a similar character.  The pools are called tranches and are

11   divided into categories based upon credit quality and other factors.  The Bloomberg

12   report uncovered some interesting facts. According to the Bloomberg report, the

13   promissory-note for the subject property was purchased by a REMIC called SARM

14   SERIES 2004-10, see **Exhibit B**. There are a total of 20 investment classes in SARM

15   SERIES 2004-10. In addition, the subject note, signed on June 11, 2004, Loan Number

16   **0017908831,** is in **14** of the 20 investment Classes. Of the **14** Classes Loan Number

17   **0017908831** is in, **7** of them have been paid.

18

19       5. The Bloomberg report is identifying seven of these investment classes as being

20   paid, therefore, the Defendants, including AURORA BANK, FSB and AURORA LOAN

21   SERVICES, LLC are attempting double recovery. Double recovery occurs when a party

22   to a contract or a person or corporation attempts to receive payment more than once for a

23   debt or unpaid bill. Credit default swaps, and mortgage insurance as well as FDIC

24   insurance, and the Department of Housing and Urban Development provides a form of

25   insurance for a defaulted loan. The amount of funds received by the Defendants for the

26   defaulted loan have not been fully disclosed. At the time that I applied for the loan I had

27   excellent credit and also I qualified for a fixed rate loan. The mortgage broker steered me

28

Complaint For Damages Page 4

1    into an adjustable rate loan with a much higher interest rate, and higher monthly

2    payments than a fixed rate loan would have required, see **Exhibit B**. The lender or the

3    mortgage broker also forged my signature on several loan application documents, see

4    **Exhibit B for copies of my real signature and the forgeries in order to see the**

5    **differences**. This act by the mortgage broker of writing an adjustable rate loan created a

6    formula for a financial crisis, which would have been averted if I had been given a fixed

7    rate loan. Mortgage brokers were paid a much higher commission for adjustable rate

8    loans, which is why they wrote so many adjustable rate loans.

9        6. Plaintiff is informed and believes that INTERNATIONAL HOME CAPITAL CORP

10   D/B/A HAMILTON FINANCIAL MORTGAGE CORP and LEHMAN BROTHERS BANK,

11   FSB as an underwriter made predatory real estate loans to unqualified buyers and

12   implemented unlawful lending practices by falsifying borrower's income, assets and

13   inflating property's market value to meet underwriting guidelines when borrowers were

14   not qualified. INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL

15   MORTGAGE CORP failed to disclose to Plaintiff that its economic Interests were adverse to

16   Plaintiff and that LEHMAN BROTHERS BANK, FSB expected to profit when Plaintiff found it

17   impossible to perform his obligations and defaulted on his mortgage.

18       A necessary element In the formation of an enforceable contract under the common law Is a

19   meeting of the minds. Two or more parties must share some expectation that a future event will

20   occur. Plaintiff expected that he would borrow money from INTERNATIONAL HOME

21   CAPITAL CORP D/B/A HAMILTON FINANCIAL MORTGAGE CORP., he would pay it

22   back, and then he would own the Property.

23   HAMILTON FINANCIAL MORTGAGE CORP and LEHMAN BROTHERS BANK, FSB,

24   expected that Plaintiff would borrow money, he would not be able to pay it back, and then

25   LEHMAN BROTHERS BANK, FSB or the investors would own the Property.

26   Since there was no shared expectation-no meeting of the minds-no contract was formed

27   between Plaintiff and lander when INTERNATIONAL HOME CAPITAL CORP D/B/A

28

1   HAMILTON FINANCIAL MORTGAGE CORP. falsified his application to qualify for the loan.

2   In addition to lander's expectation that Plaintiff would lose title to the Santa Rosa Property

3   through foreclosure, LEHMAN BROTHERS BANK, FSB anticipated transferring the Note to

4   investors immediately after Plaintiff signed the Note.  Plaintiff is informed and believes that

5   LEHMAN BROTHERS BANK, FSB purchased credit default insurance so that they would

6   receive the balance on the Note when Plaintiff defaulted, in addition to any money LEHMAN

7   BROTHERS BANK, FSB received when they securitized the Note and sold it to investors.

8   LEHMAN BROTHERS BANK, FSB expected that Plaintiff would not perform as merely one

9   victim In a scheme In which:

10  (1) LEHMAN BROTHERS BANK, FSB's fees as servicer would be greater as the number loans

11  Increased;

12  (2) LEHMAN BROTHERS BANK, FSB's fees would be greater as the balances of loans

13  increased;

14  (3) LEHMAN BROTHERS BANK, FSB's would recover the unpaid balance on Plaintiff's loan

15  through credit default insurance when Plaintiff inevitably defaulted; and

16  (4) All risk of loss In the event of Plaintiff's default would be borne by Investors or U.S.

17  taxpayers, not LEHMAN BROTHERS BANK, FSB as the servicer.

18          Plaintiff's participation in the mortgage contract was procured by overt and covert

19  misrepresentation and nondisclosures. The parties did not share a single expectation with respect

20  to any of the terms of the mortgage contract and therefore the contract was void *ab initio*. No

21  enforceable contract was formed between Plaintiff and Lander, so his Note and DOT were never

22  assets to the Lander that could be acquired or assumed by AURORA BANK, FSB. **THE**

23  **FORGOING STATEMENTS MADE IN THIS PARAGRAPH MAKE THIS LOAN**

24  **AN UNCONCIONABLE LOAN.**

25

26  *7. The copy of the note provided by the Defendant, AURORA LOAN SERVICES, LLC had an*

27  *endorsement stamped on a separate piece of paper also known as an Allonge. Exhibit C is a copy*

28

Complaint For Damages Page 6

*of the actual endorsement, which was made to LEHMAN BROTHERS BANK, FSB.* According to the California Court of Appeals, Fourth Appellate District, an indorsement must be made on the note itself and not on a separate alonge unless there is no space left on the note and then it must be made on a separate piece of paper known as an alonge, see Pribus v. Bush 118 Cal App 3d 1003, at 1007-1008 (1981). The court stated:

> The trial court ruled that the Williams' signature on the paper attached to the promissory note did not qualify as an indorsement because there was adequate space for the indorsement on the note itself. We affirm the judgment.

> The Court went on to say:

> We believe that inherent in the rationale underlying the majority rule is the concern for preventing fraud. An allonge, even though "so firmly affixed ... as to become a part" of the instrument, may be detached more easily than an indorsement on the instrument itself may be removed. Additionally, a person's signature, innocently made upon an innocuous piece of paper, could be fraudulently attached to a negotiable instrument as a purported indorsement. The majority rule, while not eliminating these methods of fraud, certainly reduces the opportunities for their use.

8. The potential for fraud with respect to assignments in today's environment of multiple assignments and serial securitizations creates even more opportunity for fraud. As a result of the ruling cited above, and the fact that there are no endorsements on the note itself, and the fact that the note is not endorsed to the alleged creditor, AURORA BANK, FSB, then the Defendants have no standing to record the legal documents, such as the Assignment of Deed of Trust, and Substitution of Trustee in the Sonoma County Recorders Office.

Complaint For Damages Page 7

9. The Defendants are violating the Fair Debt Collection Practices Act, hereinafter the FDCPA for misrepresenting themselves as actual creditors, with the power to enforce the note and deed of trust even though they are not entitled to enforce the note for all of the reasons given above. This violates Title 15, US Code, Sections 1692e, false representation and 1692f, Unfair Practices. In particular Title 15, US Code, Section 1692(e) states that: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:........ (2) The false representation of -(A) the character, amount, or legal status of any debt; or..........

10. In addition, Title 15, Section 1692f Unfair Practices, makes unlawful the following:
1692f(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -
   (A)  there is no present right to possession of the property claimed as collateral
         through an enforceable security interest;

11. Title 15, Section 1692f is violated because the Defendants all participated in falsely representing themselves as creditors or as the representatives of creditors when they are not creditors, because of the following: (a) the evidence from the Bloomberg Report demonstrating conclusively that the note is not held by the Defendants, AURORA LOAN SERVICES, LLC or AURORA BANK, NA, but is held by another party and the debt is paid off as discussed above; (b) the failure of the Defendants to Exhibit the Instrument when asked pursuant to UCC 3-501 and the equivalent under California law

1    meaning that the Defendants as imposter creditors cannot enforce the note that they do

2    not hold, Matter of Staff Mortg. & Inv, 550 F 2d 1228 (Ninth Circuit, 1977) and meaning

3    that I, as an alleged debtor, do not have to pay the alleged debt under UCC 3-501 when

4    the alleged creditors cannot "Exhibit the Instrument"; (c) MERS assignment of the note is

5    not valid and cannot confer title to the Deed of Trust, when MERS was never a note

6    holder has never been a note holder and has never been entitled to receive payments, SEE

7    *Mortgage Elec. Registration Sys. Inc.* v. *Neb. Dept. of Banking & Fin., 704* N.W.2d 784,

8    **787 (Neb. 2005) ("MERS argues that it does not own the promissory notes secured by**

9    **the mortgages *and has no right to payments made on the notes.")* (emphasis added).** Also

10   the alleged MERS document signers on the various legal documents recorded at the County

11   Recorder's Office were not MERS executives as alleged. And there is no record supplied by

12   the Defendants showing how and under what circumstances they are acting on behalf of

13   the actual note holder with a power of Attorney or similar authority, creating a

14   controversy as to who the real note holder is. AURORA BANK, FSB and their

15   subsidiaries are claiming to have the power to enforce the note. Clearly not all of these

16   alleged creditors can be correct about their claim to have the power to enforce the note.

17   The Defendants are making false and misleading statements, and it appears that the

18   Defendants refusal to Exhibit the Instrument as required under UCC 3-501 supplies this

19   court with more than enough evidence that the Defendants are not genuine creditors and

20   are not entitled to enforce the note. I have seen no evidence that UCC 3-501 and

21   California Commercial Code Section 3501 have been repealed. Therefore it is the duty of

22   this court to uphold the law and uphold our rights under the FDCPA, Title 15, US Code,

23   Section 1692e, by demanding that the Defendants Exhibit the Instrument as required

24   under UCC 3-501 or else disclaim any right, title and interest in the subject property and

25   quiet the title in our favor.

26

27

28

12. Also the Defendants are violating Title 15 US Code, Section 1692f, Unfair Practices, wherein they are claiming to have the powers of *Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -*

*(A)   there is no present right to possession of the property claimed as collateral through an enforceable security interest;*

*13. The Defendants do not have the powers to take or threaten to take the subject property as discussed above, in Section 1692f of Title 15 US Code in a non-judicial foreclosure because:* the Defendants all participated in falsely representing themselves as creditors or as the representatives of creditors when they are not creditors, because of the following: (a) the Bloomberg Report demonstrates conclusively that the note holder is a REMIC and that the Defendants are not the note holders as discussed above; (b) the failure to Exhibit the Instrument when asked pursuant to UCC 3-501 and the equivalent under California law meaning that the Defendants as imposter creditors cannot enforce the note that they do not hold, Matter of Staff Mortg. & Inv, 550 F 2d 1228 (Ninth Circuit, 1977) and meaning that I, as an alleged debtor, do not have to pay the debt under UCC 3-501; (c), MERS assignment of the note is not valid and cannot confer title to the Deed of Trust, when MERS was never a note holder has never been a note holder and has never been entitled to receive payments, SEE ***Mortgage Elec. Registration Sys. Inc.* v. *Neb. Dept. of Banking & Fin., 704* N.W.2d 784, 787 (Neb. 2005) ("MERS argues that it does not own the promissory notes secured by the mortgages *and has no right to payments made on the notes."*) (emphasis added).** Also the alleged MERS document signers on the various legal documents recorded at the County Recorder's Office were not MERS executives as alleged. And there is no record supplied by the Defendants showing

how and under what circumstances they are acting on behalf of the actual note holder with a power of Attorney or similar authority, creating a controversy as to who the real note holder is. If the Defendants had supplied us with the original note with the proper indorsements then the demand to identify the actual note holder would not be necessary. AURORA BANK, FSB and their affiliates, AURORA LOAN SERVICES, LLC are claiming to have the power to enforce the note. Clearly not all of these alleged creditors can be correct about their claim to have the power to enforce the note.

14. Clearly not all of these banks can be correct about their claim to have the power to enforce the note. All of the Defendants are making false and misleading statements, and it appears that the Defendants refusal to Exhibit the Instrument as required under UCC 3-501 supplies this court with more than enough evidence that the Defendants are not genuine creditors and are not entitled to enforce the note. Therefore it is the duty of this court to uphold the law and uphold my rights under the FDCPA, Title 15, US Code, Section 1692e, by demanding that the Defendants Exhibit the Instrument as required under UCC 3-501 or else disclaim any right, title and interest in the subject property and quiet the title in our favor.

15. There are several other problems with the endorsement and the lack of proper endorsements on the note itself. The endorsement should have been from the table funder to the Sponsor/Seller that is Lehman Brothers Holdings. Second, their exists no endorsement from the sponsor/seller to the depositor. Third, there exist no endorsement from the depositor to the Issuing Entity. Finally, there exist no As signments filed on the county level transferring ownership of the Deed of Trust from the Table Funder to the

Sponsor/seller to the Depositor to the Issuing Entity. This transfer of ownership appears to be incomplete and makes the Assignment of Deed of Trust and subsequent documents, such as the Substitution of Trustee, and the Notice of Default void ab initio. A copy of the Note is attached as **Exhibit D**.

16. It is widely known that banks and warehouse lenders have securitized virtually all of their notes and placed them into investment trusts known as REMICs. An example of an indorsed note is attached and incorporated by reference as **Exhibit E**. **Exhibit E** is a copy of a pleading with a promissory note made an exhibit in said pleading demonstrating that WORLD SAVINGS BANK, FSB was in the habit of selling their notes to THE BANK OF NEW YORK, which by way of a recent merger is now known as THE BANK OF NEW YORK MELLON. This **Exhibit E** demonstrates the type of indorsement that is used by banks when they are transferring and negotiating their notes. Such an indorsement must be made on a note when the loan is sold and a copy of the note must be supplied to the borrower upon request, see California Civil Code Section 2943(b)(1), and California Commercial Code Section 3501(2).

17. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The Deed of Trust enforces the Note, and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur: The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

18. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has voided its intended Tax Free Status, or the asset is not in fact owned by it.

19. The original lender and their successor-in-interest has a duty to notify me of changes in assignments of the note and deed of trust, see KIRBY v. PALOS VERDES ESCROW COMPANY, INC., 183 Cal. App. 3d 57; 227 Cal. Rptr. 785; (Calif. Court of Appeal, First Dist1986), which states: "The CUCC does not specify what type of "notification" is required to effectively inform the debtor of an assignment, but does provide that the failure to "reasonably identify the rights assigned" renders any notification ineffective. (§ 9318, subd. (3).) (7) *In order to obligate the debtor to pay the assignee, in lieu of the assignor, the notification must (1) indicate that the account has been assigned*, (2) reasonably identify which rights have been assigned, and (3) specifically direct the debtor to pay the assignee." The assignee and the original lender failed to give the proper notification about the nature of the assignment, making the debt obligation unenforceable. I have title to the subject land and home, pursuant to the deed to the subject land and buildings, see **Exhibit F**. The subject property is located at 1243 Kodiak Court, Santa Rosa, California and is described as follows: Real Property in the unincorporated area of the Sonoma-County, California-state, described as follows:

LOT 5, as numbered and designated on a map of Montgomery Village, Subdivision 33, filed in the Office of the County Recorder on May 18, 1961, in Book 86 of Maps Page 32

1    and 33, Sonoma County Records.  The above-described property is commonly known as
2    1243 Kodiak Court, Santa Rosa, California.

3        20. The Defendant AURORA BANK, FSB, is a holding company that alleges that
4    they have been assigned the Deed of Trust to the subject property at 1243 Kodiak Court,
5    Santa Rosa, California. The documentation that they rely upon is based upon a series of
6    legal documents recorded in the county recorders office that are flawed and defective. A
7    Deed of Trust was signed on June 11, 2004 as shown on the first page of said deed of
8    trust, see **Exhibit G**, and was notarized and recorded. The Deed of trust identified
9    **INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL**
10   **MORTGAGE CORP** as the Lender. The Assignment of Deed of Trust was executed by
11   an employee of AURORA LOAN SERVICES, LLC alleging that, she, Jan Walsh, is a
12   MERS, Inc, executive. There is no resolution from the MERS, Inc. Board of Directors
13   that The Assignment of Deed of Trust was subsequently recorded on or about December
14   23, 2011. In addition, MERS has never demonstrated that they have a property interest in
15   the note and deed of trust, which would have allowed them to sign and record an
16   assignment of deed of trust. The assignment of Deed of Trust is a document that must be
17   made a part of the foreclosure process, see California Civil Code Section 2932.5.
18   California Civil Code Section 2932.5 states as follows:

19   **2932.5**.  Where a power to sell real property is given to a mortgagee, or other
20   encumbrancer, in an instrument intended to secure the payment of money, the power is
21   part of the security and vests in any person who by assignment becomes entitled to
22   payment of the money secured by the instrument. **The power of sale may be exercised**
23   **by the assignee if the assignment is duly acknowledged and recorded**

21. The assignment of the Deed of Trust, signed by MERS is invalid, because they have never had a security interest in the note, they have never had a property interest in the note and deed of trust, and because INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL MORTGAGE CORP never assigned the note and deed of trust to MERS, Inc. As a result of the foregoing, the recorded Assignment of Deed of Trust is without force and effect in law.

22. A Nominee in California cannot own the Note, □ *"The word "nominee" in its commonly accepted meaning, connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him."* □Cisco v. Van Lew, 60 Cal.App. 2d 575, 583-584, 141 P.2d 433, 438.

23. MERS does not have a "beneficial interest" in the deeds of trust as that term is used in California Civil Code Sect. 2934(a). The term "beneficiary" or "beneficial interest" means the person who actually loses money if the loan is not paid. To further reinforce that MERS is not the true beneficiary of the loan, one need only look at the following Nevada Bankruptcy case, Hawkins, Case No. BK-S-07-13593-LBR (Bankr.Nev. 3/31/2009) (Bankr.Nev., 2009) – **"A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured**

1    by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck,

2    and quack like a duck, then it's not a duck." (Emphasis added).

3

4        24. Numerous courts around the country have issued rulings that MERS is not

5    allowed to act as a creditor and they are not someone entitled to enforce the note when

6    they are not a note holder. As a result of the foregoing, MERS and AURORA LOAN

7    SERVICES, LLC and AURORA BANK, FSB, and their agents and principals are not the

8    note-holders, they are strangers to the transaction and not entitled to enforce the note.

9    Moreover, elsewhere MERS has expressly admitted that it has no right to receive

10   payments on the note. *See, e.g., Mortgage Elec. Registration Sys. Inc.* v. *Neb. Dept. of*

11   *Banking & Fin., 704* N.W.2d 784, 787 (Neb. 2005) ("MERS argues that it does not own

12   the promissory notes secured by the mortgages *and has no right to payments made on the*

13   *notes.")* (emphasis added).

14

15       25. Only SARM SERIES 2004-10 can enforce the note and deed of trust,

16   assuming that they can produce admissible evidence that they have possession of the note

17   and will Exhibit the Instrument and produce an Assignment of Deed of Trust. Also, the

18   note, with indorsements naming them as the assignee, has not been brought forward by

19   the Defendants in this matter, so that their standing as creditors is not established and

20   they have not ratified the commencement, as required under FRCP Rule 17(a). In

21   California, a US Bankruptcy Court for the Southern District of California ruled in the

22   Salazar case that the creditor violated 2932.5 of the Civil Code and cannot foreclose, see

23   in re: Salazar Chapter 13 bankruptcy (Bankruptcy No: 10-17456-MM13). See also

24   MERS, INC. v. NEBRASKA DEPARTMENT OF BANKING AND FINANCE, S-04-

25   786, (Nebraska Sup. Ct, 2005); RESIDENTIAL FUNDING CO., LLC v. SAUMAN,

26

27

28

Docket No. 290248; BELLISTRI V. OCWEN LOAN SERVICING, LLC, 284 S.W.3d
619, 623 (Mo. App. 2009); LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp.
2006); Mortgage Electronic Registration System, Inc. v. Southwest Homes of Arkansas,
08-1299 (Ark. 3/19/2009) (Ark., 2009).

26. In LANDMARK NATIONAL BANK v. KESSLER, 216 P.3D 158
(Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of
MERS in relation to the facts in that case and other non-binding court cases and
concluded that MERS is only a digital mortgage tracking service. The Court
recited that MERS never held the promissory note, did not own the mortgage
instrument (though the documents identified it as "mortgagee"), that it did not lend
money, did not extend credit, is not owed any money by the mortgage debtors, did
not receive any payments from the borrower, suffered no direct, ascertainable
monetary loss as a consequence of the litigation and consequently, has no
constitutionally protected interest in the mortgage loan.

 (KANSAS SUPREME COURT, 2009).

27. For there to be a valid assignment, there must be more than just
assignment of the deed alone; the note must also be assigned. MERS purportedly
assigned both the deed of trust and the promissory note, however, there is no
evidence of record that establishes that MERS either held the promissory note or
was given the authority . . . to assign the note. MERS claims to have transferred

the deed of trust but not the note. There is no copy of the note with an indorsement, whereby the note is indorsed over to MERS. There is no admissible evidence that MERS ever had possession of the note and the deed of trust. No one has ever explained who is currently holding the note and why AURORA BANK, FSB has the rights of a holder of the note and why they are entitled to enforce the note. As a result, the note is lost and the ownership of the note and deed of trust has been split and cannot be enforced, because the note is not in the possession of the alleged creditor, see Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872).

28. As a result of the foregoing, the Defendants are not the owners of record, and do not have a right to possession of the note, as incorrectly stated in the Trustees Deed Upon Sale, since the Deed of Trust was assigned by MERS, Inc., who never had ownership of the note, and deed of trust because the original lender INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL MORTGAGE CORP, did not assign the deed of trust and there is a gap in the chain of title to the Deed of Trust as well as the gap in the chain of title to the note that will result in a gap in the chain of title to the subject property when the trustees sale is conducted. MERS does not have the status of someone entitled to enforce the note and therefore cannot foreclose and does not have standing to sue for unlawful detainer. Also, according to the Bloomberg Report, the Note is held by a REMIC and not AURORA BANK, FSB.

29. In addition, the only indorsement on the note that I have seen is where the original lender assigned the note to LEHMAN BROTHERS BANK, FSB. LEHMAN BROTHERS BANK, FSB is not listed as a member of MERS on the MERS website, and, since the note and Deed of Trust were assigned to LEHMAN BROTHERS BANK, FSB, MERS was acting as an agent of LEHMAN BROTHERS BANK, FSB when they alleged executed the Assignment of Deed of Trust. The property cannot be sold by a stranger to the transaction, AURORA BANK, FSB, since the Assignment of Deed of Trust is void, and defective and without force and effect in law, because it was signed by someone who had no standing, since MERS, Inc. does not have standing to assign the deed of trust as stated above. As a result of the foregoing, AURORA BANK, FSB through it's wholly owned subsidiary, AURORA LOAN SERVICES, LLC, is an imposter and a stranger to the transaction having been assigned the Deed of Trust by MERS, Inc., who is also a stranger to the transaction and an imposter. MERS, INC. has never acquired an ownership interest in the note and deed of trust from INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL MORTGAGE CORP. As a result of the foregoing, AURORA LOAN SERVICES, LLC and AURORA BANK, LLC are strangers to the transaction and have no standing to record an Assignment of Deed Of Trust pursuant to federal Rules of Civil Procedure, Rule 17(a) because they have not ratified the commencement. Consequently, the Defendants did not comply with the requirements under California Civil Code Section 1162, and ny possession of the subject property is lawful, since the entire foreclose process is flawed and defective as discussed above. I, therefore declare that the NOTICE OF DEFAULT is void and without force and effect in law, since the Defendants and all of them have never had a lawful interest in the subject property as discussed above. Based upon the foregoing, MERS is a stranger to the

transaction and has no standing to sign any Assignment of Deed of Trust in this matter.

30. The assignment of the lien without a transfer of the debt was a nullity in law, see (Polhemus v. Trainer, 30 Cal. 685; Peters v. Jamestown Box Co., 5 Cal. 334; Hyde v. Mangan, 88 Cal. 319; Jones on Pledges, secs. 418, 419; Van Ewan v. Stanchfield, 13 Minn. 75.) Nothing under California Civil Code §§ 2924 through 2924k applies, unless there is a legal chain of title for the Deed of Trust with the Note from the original lender *to MERS,* and then to the foreclosing party.

## C. CALIFORNIA CIVIL CODE § 2924 IS NOT AN EXCLUSIVE REMEDY

31. California Civil Code § 2924 DOES NOT "EXPRESSLY" EXCLUDE ☐OR SUPERCEDE California Commercial Code §§ 3305(2), 3301, OR ANY OTHER CALIFORNIA LAWS. ☐In the case of California Golf, L.L.C. v. Cooper, 163 Cal. App. 4th 1053, 78 Cal. Rptr. 3d 153, 2008 Cal. App. LEXIS 850 (Cal. App. 2d Dist. 2008), the Appellate Court held that the remedies of 2924h were not exclusive.

32. In California Golf v. Cooper, 163 Cal. App. 4th 1053, at 1070, (2008) the court stated:

"Even if respondents were correct, however, in their assertion that California

1   Golf has a remedy set forth in section 2924h, subdivision (d), this would not assist

2   them since, contrary to their assertion, the remedies of section 2924h are not

3   exclusive. Respondents rely on statements in three cases which, they argue,

4   indicate that the Legislature intended to occupy the field of nonjudicial foreclosure

5   sales and permit no further remedies. (*I. E. Associates v. Safeco Title Ins. Co.*

6   (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596]; *Residential Capital*

7   *v. Cal-Western Reconveyance Corp., supra,* 108 Cal.App.4th at p. 821; *Moeller v.*

8   *Lien* (1994) 25 Cal.App.4th 822, 834 [30 Cal.Rptr.2d 777].) Before addressing the

9   cases on which respondents rely, a brief overview of the purposes of the statutes

10  governing nonjudicial foreclosure is appropriate."

11
    The Court went on to say:
12
        "(6) "'[Civil Code s]ections 2924 through 2924k provide a comprehensive
13
    framework for the regulation of a nonjudicial foreclosure sale pursuant to a power
14
    of sale contained in a deed of trust.' [Citations.] This comprehensive statutory
15
    scheme has three purposes: `"(1) to provide the creditor/beneficiary with a quick,
16
    inexpensive and efficient remedy against a defaulting debtor/trustor; **(2) to protect**
17
    **the debtor/trustor from wrongful loss of the property; and** (3) to ensure that a
18
    properly conducted sale is final between the parties and conclusive as to a bona
19
    fide purchaser." [Citations.]' [Citation.]" (*Melendrez v. D & I Investment, Inc.*
20
    (2005) 127 Cal.App.4th 1238, 1249-1250 [26 Cal.Rptr.3d 413].).):" (Emphasis
21
    added.)
22

23      **D. THE NOTE MUST BE ASSIGNED AND NEGOTIATED BY WAY**

24  **OF AN INDORSEMENT.**

25

26
    32. The note and deed of trust for the subject property have also acquired the
27

28

deficiencies and defects in the loan documents, assignment documents and securitization of the loan that occurred prior to this civil case having been filed. These defective documents make the foreclosure and the filing of an unlawful detainer fraudulent and defective and means that the Defendants have no standing, because of the defects in the deed of trust and subsequent assignments and failure to record a valid Assignment of Deed of Trust document. By way of illustration, it is well known that WORLD SAVINGS BANK, FSB was in the habit of selling virtually all of their promissory notes and Deeds of Trust, as can be seen in **Exhibit E**, a copy of court pleading filed by the WACHOVIA MORTGAGE, NA, in which they revealed that WORLD SAVINGS BANK, FSB sold their note to BANK OF NEW YORK, NA.


33. The rubber stamp used on this document, see **Exhibit E**, is forensic evidence that WORLD SAVINGS BANK, FSB sold virtually all of their promissory notes to THE BANK OF NEW YORK. This indorsed note is similar to all of the promissory notes that are received by banks. The notes are all ways indorsed by the original lender and then assigned to a note buyer.  In addition, I mailed a Qualified Written Request to the Plaintiff's agent, asking them to produce evidence that they had possession of the note or were acting as an agent for the note-holder and that the note was in their possession, See **Exhibit H**, asking them to produce admissible evidence that they are the owner of the note and entitled to enforce the note. AURORA BANK, FSB and AURORA LOAN

SERVICES, LLC steadfastly refused to reveal the identity of the actual-note-holder and refused to provide a copy of the note and refused to provide admissible evidence that AURORA BANK, FSB OR THEIR PRINCIPALS OR AGENTS were the note-holders. California law requires the creditor or alleged creditor to supply the debtor with a copy of the note with any and all modifications to the note when the note is requested, see California Civil Code 2943, California Commercial Code Section 3501(2). California law requires the alleged creditor to be in possession of the note as a requirement to enforce the note, see California Commercial Code Section 3301, 3501(2), 3309, 1201(b)(21)(A), 3201, 3202, 3203 and 3204, all require the alleged lender to be in possession of the note, See Matter of Staff Mortg. & Inv., 550 F 2d 1228, (Ninth Circuit, 1977) and Bear v. Golden Plan of California, Inc. 829 F 3d 705 at 709. California state appellate courts have also been requiring the creditor to supply evidence that they are in possession of the note with the proper indorsements whenever the note and deed of trust and deed of trust is assigned, see Pribus v. Bush, 118 Cal.App.3d 1003; 173 Cal. Rptr. 747(1981). California Commercial Code Section 3501(2) states as follows:

3501

(2) Upon demand of the person to whom presentment is made, the person making presentment shall (A) exhibit the instrument, (B) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (C) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

34. Without physical transfer of the note, the sale of the note could be invalid as a fraudulent conveyance, see California Civil Code Section 3440 or as unperfected, see California Commercial Code, Section 9313-9314. The actual note-holder should bring forward the evidence that they are the note-holder and the holder of the deed of trust. The Plaintiff is not the lawful owner of the subject property because of the defects and deficiencies in the loan administration and lack of disclosures and failure to properly acknowledge and record the assignment-of-deed-of- trust document as required under California Civil Code Section 2932.5. Furthermore, any sale of the subject property by way of the Trustees Deed Upon Sale will be invalid, since AURORA LOAN SERVICES, LLC and AURORA BANK, FSB, the probable seller of the subject property does not have the note in their possession and therefore, they do not have standing to sue for unlawful detainer as a stranger to the transaction, and they have not established that they have a property interest in the note and deed of trust as the seller of the subject property, thus they have not perfected the title as required under California Civil Code 2924 and California Civil Code, Section 1161. As a result, the Defendants and all of them do not have a valid claim to ownership and possession of the subject property because of the lack of standing and numerous other defects and flaws in the pre-foreclosure documents and foreclosure documents discussed above. The actions taken and described by the Plaintiff were not in compliance with California Civil Code Sections 1161 and 1162. I do not

need permission to occupy the subject property from AURORA LOAN SERVICES, LLC or AURORA BANK, FSB. AURORA BANK, FSB, AURORA LOAN SERVICES, LLC and the other Defendants do not have a lawful claim to the property.

35. In addition, the assignment of deed of trust document was signed by a stranger to the transaction, MERS, Inc. and has no force and effect in law. When AURORA BANK, FSB allegedly was assigned the Deed of Trust they also acquired the deficiencies and defects in the loan and securitization of the loan that occurred prior to the assignment of the Deed Of Trust.

36. It is well known that banks throughout the period from 1999 to today have securitized virtually all of their mortgages for single family dwellings and many have created their own REMICs, which stands for real-estate-mortgage-investment-conduit.

37. AURORA BANK, FSB has not supplied any admissible evidence that they acquired the Vesko Borislavov Ananiev promissory note along with the assignment of the Deed of Trust.

38. I, the Plaintiff am the signatory/ principal on the attached document, a deed of trust, see **Exhibit G**. This document was signed on June 11, 2004 as can be seen from the <u>date</u>

at the top of the first page.

39. By way of analogy, a decision was rendered in a federal court which is similar to and analogous to the case at bar. Within the past six months a judge in a California Bankruptcy Court has issued an opinion and order ruling that MERS in fact has no authority whatsoever to transfer any interest in a deed. In the case of In re: Rickie Walker, Bankruptcy Court, Eastern District, California, Case No. 10-21656, the Honorable Judge Ronald Sargis takes aim at MERS and lays bare the lie that MERS and its "system" of assigning and conveying millions of deeds of trust for mortgages is legal. In the case, the debtor Rickie Walker filed an objection to the claim of creditor Citibank, N.A., to Mr. Walker's home.  The debtor argued that even though MERS assigned the subject Deed of Trust to Citibank as a "nominal beneficiary" on behalf of Bayrock Mortgage Corporation on March 5, 2010, this provided no evidence that Citibank had any interest whatsoever in the underlying *promissory note*, since MERS itself had no interest in the note. Judge Sargis observed that there was no evidence in the record that MERS ever had an interest in the underlying note, so the assignment of the deed to Citibank on behalf of Bayrock was meaningless in terms of Citibank having any right to the debtor's property secured by the note.  Furthermore, like an increasing number of courts across this country, Judge Sargis honed in on MERS:

> Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed. *See In re Foreclosure Cases*, 521 F.Supp.2d 650, 653 (S.D. Oh. 2007); *In re Vargas*, 396 B.R. 511, 520 (Bankr. C.D. Cal.

1    2008); *Landmark Nat'l Bank v. KeslerI,* 216 P.3d 158 (Kan. 2009);

2    *Lasalle Bank v. Lamy*, 824 N.Y.S.2d 769 (N.Y. Sup.Ct. 2006). Since no

3    evidence of MERS' ownership of the underlying note has been offered,

4    and other courts have concluded that MERS does not own the underlying

5    notes, **this court is convinced that MERS had no interest it could**

6    **transfer to Citibank.**

7    In re Walker, p. 2 (emphasis added).   The Judge then slammed the hammer

8    down, so to speak:

9

10

11   "Since MERS did not own the underling [sic] note, it could not

12   transfer the beneficial interest of the Deed of Trust to another. **Any**

13   **attempt to transfer the beneficial interest of a trust deed without**

14   **ownership of the underlying note is void under California law**.", In Re

15   Walker, Supra. (Emphasis Added.)

16

17   40.   In effect, Judge Sargis revealed that the Emperor was not wearing any clothes:

18   MERS did not have the authority to transfer anything despite having ostensibly done so

19   for millions of transactions since its founding.

20

21   41. In short, the involvement of MERS in *any* mortgage is cause for concern and,

22   frankly, outright suspicion, just as the Landmark court observes: "In attempting to

23   circumvent the statutory registration requirement for notice, MERS creates a system in

24   which the public has no notice of who holds the obligation on a mortgage." And, by

25   extension, who is legally able to foreclose on a property. To put it bluntly:

26   **Any attempt to transfer the beneficial interest of a trust deed without ownership of**

27   **the underlying note is void under California law.** No evidence has been advanced or

28

Complaint For Damages Page 27

presented by the Defendants as to who the actual note holder is so that the identity of the note holder is a mystery, and the failure to disclose within thirty days of said transfer is a violation of Title 15, US Code, Section 1641(g).

42. It is clear that the mere existence of a comprehensive statutory scheme such as California Civil Code 2924-2924k does not necessarily eliminate all further remedies without the consideration of the relevant policy concerns. Indeed, California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a non-judicial foreclosure sale when not inconsistent with the policies behind the statutes. In *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1231 [44 Cal.Rptr.2d 352, 900 P.2d 601], the California Supreme Court concluded that a lender who obtained the property with a full credit bid at a foreclosure sale was not precluded from suing a third party who had fraudulently induced it to make the loan. The court concluded that "'the antideficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts'" and that, if the court applies a proper measure of damages, "fraud suits do not frustrate the antideficiency policies because there should be no double recovery for the beneficiary." (*Id.* at p. 1238.) In *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121 [85 Cal.Rptr.2d 647], the court held that a junior lienor retains the right to recover damages from the trustee and the beneficiary of the foreclosing lien if there have been material irregularities in the conduct of the foreclosure sale. (See also *Melendrez v. D & I Investment, Inc., supra,* 127 Cal.App.4th at pp. 1257-1258; *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1095 [106 Cal.Rptr.2d 443] [a trustee's sale tainted by fraud may be set aside].)

43. The Defendants, including AURORA BANK, FSB, and their agents and principals, claim to have the power to enforce the original note and have been making

preparations to foreclose on the subject property, in spite of the fact that

**INTERNATIONAL HOME CAPITAL CORP D/B/A HAMILTON FINANCIAL**

**MORTGAGE CORP**. have securitized all of their notes. This table lender has a history

of securitizing their notes and thus has securitized this note and has no standing to

foreclose or claim to have a continuing interest in the note, since that was transferred

when they sold the note.


43. AURORA BANK, FSB, and AURORA LOAN SERVICES, LLC, and their

agents and assigns lack standing to foreclose, because they have failed and refused to

bring forward the original note with the endorsements on the back of the note for my

inspection. Federal courts have consistently ruled that banks must be in possession of the

original note, see Matter of Staff Mortg. & Inv. Co. 550 F. 2d 1228, (CA 9, 1977);

Motobecane America, Ltd. v. Patrick Petroleum Co., 791 F.2d 1248, (CA 6, 1986); In re

Maryville Sav. & Loan Corp., 743 F.2d 413, CA 6, 1984); In re Holiday Intervals, Inc.,

931 F.2d 500, (CA 8, 1991). Other Federal Courts have stated that the mortgage creditor

must have an endorsement stamp on the note, endorsing the note over to that creditor, see

In Re BARRY WEISBAND, 4: 09-bk-05175 EWH, (US Bankruptcy Court, Arizona,

2009); IN RE: LAVERL H. WILHELM, 08-20577-TLM, (US Bankruptcy Court, Idaho,

2009). The Defendants, AURORA BANK, FSB, and AURORA LOAN SERVICES,

LLC are not the real-party-in-interest, pursuant to FRCP Section 17(a), without bringing

forward the original note and demonstrating that they are in possession of the note, and as

a result, do not have standing to claim to be a creditor with the powers of foreclosure.


44. The Court in RE: LAVERL H. WILHELM, supra, stated as follows: **"Before**

**delving into the specifics of these cases, it is worth reiterating that changes in mortgage practices during the past several years – including, most prominently, the serial assignment of mortgage obligations – have complicated the factual situations to which the standing analysis applicable to stay relief motions must be applied.** See In re Sheridan, 09.1 I.B.C.R. 24, 24, 2009 WL 631355, at *1 (Bankr. D. Idaho 2009). Several bankruptcy courts – including this Court, in In re Sheridan – have been required to issue decisions explaining who does (and who does not) have standing to seek stay relief. See, e.g., In re Jacobson, 402 B.R. 359, 365-67 (Bankr. W.D. Wash. 2009); In re Vargas, 396 B.R. 511, 520-21(Bankr. C.D. Cal. 2008); In re Hwang, 396 B.R. 757, 765-69 (Bankr. C.D. Cal.2008); In re Mitchell, 2009 WL 1044368, at *2-6 (Bankr. D. Nev. Mar. 31, 2009). In In re Sheridan, for example, this Court explained that a stay relief motion **"must be brought by one who has a pecuniary interest in the case and, in** 4 For ease of reference, the cases are listed in alphabetical order.**"**

45. Standing and the real-party-in-interest requirements are related. Standing encompasses both constitutional and prudential elements. See, e.g., Warth v. Seldin, 422 U.S. 490, 498-99 (1975); In re Simplot, 2007 WL 2479664, at *9 (Bankr. D. Idaho. Aug. 28, 2007). To have constitutional standing, the litigant must allege an "injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Fed. Election Comm'n, __ U.S. __, 128 S. Ct. 2759, 2768 (2008). Prudential standing includes the idea that the injured party must assert its own claims, rather than another's. See, e.g., Warth, 422 U.S. at 499. Thus, the real-party-in-interest doctrine generally falls within the prudential standing doctrine. The Bankruptcy Court in In Re LA VERL H. WILHELM,